WILLIS, ROBERT E., Associate Judge
(dissenting).
I must respectfully dissent because it is my conclusion that the games described constitute gambling and the legislature in passing the statute involved made the following reservation:
“Nothing in this chapter shall be held or construed to authorize or permit any association organized hereunder to carry on, conduct, supervise, permit or suffer any gambling or game of chance, lottery, betting or other act in violation of the criminal laws of the state;” F.S.A. § 616.09
Section 849.14 of the Florida Statutes, F.S.A., provides as follows:
“Unlawful to bet on result of trial or contest of skill, etc. — Whoever stakes, bets or wagers any money or other thing of value upon the result of any trial or contest of skill, speed or power or endurance of man or beast, or whoever receives in any manner whatsoever any money or other thing of value staked, bet or wagered, or offered for the purpose of being staked, bet or wagered, by or for any other person upon any such result, or whoever knowingly becomes the custodian or depositary of any money or other thing of value so staked, bet, or wagered upon any such result, or whoever aids, or assists, or abets in any manner in any of such acts all of which are hereby forbidden, shall be guilty of gambling, and shall be punished by imprisonment not exceeding six months or by fine not exceeding five hundred dollars.”
Sections 849.26 and 849.27 Florida Statutes provide that any gambling transaction to be excluded from the provisions of Chapter 849 must be one which is “expressly authorized by law.”
The words “bet” and “wager” are defined in 38 C.J.S. Gaming § l-C(l) pp. 43-44, as follows:
“The definitions of ‘bet’ and ‘wager’ ordinarily given imply that there must be two or more contracting parties having mutual or reciprocal rights with respect to the money or other things that are wagered, and usually called the stakes of the bet or wager, and that each of the parties shall jeopardize something, and have the chance to make something or to recover the stakes or thing bet or wagered on the determination of the contingent or uncertain event in his favor; but according to some decisions it is not essential that both parties should stand to lose, it being sufficient if one party stands to lose or win. * * * ”
It appears that the players in the games described in 616.091 of the Florida Statutes, F.S.A., are participating in the prohibited transactions specified in 849.14. They are contracting with the operator and have mutual rights with respect to the money and prize. The operator receives the money paid by the player with no return to the player if he fails to win. If the player wins he receives a prize from the operator. Each jeopardizes something. Each has the chance to make something on the determination of the contingent or uncertain event of whether the player will play the game with such skill as to win the prize. In determining whether a given operation constitutes gambling, the courts look to substance rather than form and when we look at the substance of a game of the kind under consideration it is apparent that the player actually pays money as a bet or wager against the prize offered by the operator.
Section 849.01 of the Florida Statutes, F.S.A. provides as follows:
“Whoever by himself, his servant, clerk or agent, or in any other manner has, keeps, exercises or maintains a gaming table or room, or gaming implements or apparatus, or house, booth, tent, shelter or other place for the purpose of gaming or gambling or in any place of which he *752 may directly or indirectly have charge, control or management, either exclusively or with others, procures, suffers or permits any person to play for money or other valuable thing at any game whatever, whether heretofore prohibited or not, shall be punished by imprisonment in the state prison not exceeding three years, or by fine not exceeding five thousand dollars.”
Relative to the above statute the Supreme Court of Florida in McBride v. State, 39 Fla. 442, 22 So. 711 said:
“The consensus of the better opinions is that the wagering, betting, or laying of money or other thing of value upon the transpiring of any event whatsoever, whether it be upon the result of a game of chance or upon a contest of skill, strength, speed, or endurance, whereby one party gains and the other loses something for nothing, whether the parties betting be the actors in the event upon which their wager is laid or not, is gaming or gambling, within the meaning of these acts.”
It is my conclusion that when the operator of a skill game permits a person to put up a sum of money for which he receives two things, (1) The right to play a skill game, and, (2) An opportunity to win a valuable prize, the operator is permitting the player to play at a game for a valuable thing within the condemnation of Section 849.01.
Lotteries are generally classified as a species of gambling, though the statutes dealing with them and other forms of gambling have recognized a clear line of distinction between them. This distinction has been recognized by different degrees of punishment and by the ascription of different attributes to each. Lee v. City of Miami, 121 Fla. 93, 163 So. 486 at page 489, 101 A.L.R. 1115.
The case of Creash v. State, 131 Fla. 111, 179 So. 149, is enlightening on the point. There the defendants had been arrested and subsequently convicted of conducting a gambling house, where it was shown that they were conducting a bingo game. The Supreme Court, in affirming the conviction, had the direct question of the difference between “purse, prize or premium” and “stake, bet or wager” presented to it. In answering the question, the Court was confronted with the admission or showing that the prospect of winning depended to some extent on the skill of the player in selecting the cards and the throwing of the balls. It was also shown that the prizes — given in cash — were from the bank account of the operator, and that no part of the fee from the players went into the prize given. The defendants there contended that on the facts and on the distinction between “purse, prize or premium” and “stake, bet or wager” their conviction should be upset, the distinction being that in the former there was an element of skill inherent in the result. The Supreme Court rejected this contention, and said:
“It is quite true that in these cases (the ones cited by Plaintiffs-in-error) we defined a ‘purse, prize, or premium’ as something of value offered for the winner of a contest, but for which the one offering it does not compete and stands no chance to recover any part of it. We also held that a ‘purse, prize, or premium’ was different from a ‘stake, bet, or wager’ as to which each party interested has a chance to win and takes the risk of losing the whole or some material part of it.
“We do not understand, however, that the question of gambling or one’s guilt who is charged with operating a gam-ling house is concluded by the question of whether the thing contested for was a ‘purse, prize, or premium’ or a ‘stake, bet or wager.’ * * *
*753 “Chance actuated by the hope of getting something for nothing is the controlling element in gambling. Any agreement or inducement by which one person risks his money or other thing of value with no prospect of return except to get for nothing the money or goods of another is gambling. If the contest for a ‘purse, prize, or premium’ or a ‘stake, bet or wager’ has this element in it, it is gambling, regardless of the name by which it is called, the implements employed to accomplish the act, or the manner in which it is conducted.
“In gamblers’ lingo, ‘stake, bet or wager’ are synonymous and refer to the money or other thing of value put up by the parties thereto with the understanding that one or the other gets the whole for nothing but on the turn of a card, the result of a race, or some trick of magic. A ‘purse, prize, or premium’ has a broader significance. If offered by one (who in no way competes for it) to the successful contestant in a fete of mental or physical skill, it is not generally condemned as gambling, while if contested for in a game of cards or other game of chance, it is so considered. Section 7666, Compiled General Laws of 1927. It is also banned as gambling if created as in this case by paying admissions to the game, purchasing certificates, or otherwise contributing to a fund from which the ‘purse, prize, or premium’ contested for is paid, and wherein the winner gains, and the other contestants lose all.”
Appellants question whether or not Section 616.091 Florida Statutes, F.S.A. changed, modified, expanded or amended any of the gambling statutes of the State so as to permit the operation at public fairs and expositions of the games set forth in Section 616.091 (m) through (jj inclusive.)
The judge of the trial court found and adjudged that Section 616.091 did not amend repeal or modify any of the provisions of Section 849.14 Florida Statutes, F.S.A., and on the contrary, the legislature, by its specific wording, intended to retain the provisions of Chapter 849 concerning gambling. The trial judge stated as follows:
“For many years both before and after the enactment of Section 616.091, Florida Statutes, these games have been played in the State of Florida with the consent and knowledge of law enforcement officials, notwithstanding the provisions of the gambling laws of the State (e. g., Sections 849.01, 849.09 and 849.14, Florida Statutes) and notwithstanding the provisions of Chapter 616, Florida Statutes, which recognize the prohibitions of those gambling laws (Sections 616.09 and 616.091(1), Florida Statutes). The reasoning of an opinion of the Attorney General in the year 1955 (Op.Atty.Gen. 055-60) which declared a shooting gallery to be gambling has not been applied to these games by such officials. This apparently was done for the purpose of assisting fairs and expositions.”
It is my conclusion that Section 616.091 Florida Statutes, F.S.A. did not change the criminal statutes of this state. It did not authorize any gambling, game of chance, or betting, at Florida fairs but expressly recognized legislative prohibitions against any criminal violation in connection with the amusement games conducted.
I conclude that the games specified constituted gambling and were therefore illegal.
I respectfully dissent.